UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:05cv281-H

UNICORN INVESTMENT BANK,
B.S.C.(c), a foreign corporation, and THE
UNICORN GROUP, a foreign corporation,

    Plaintiffs,

vs.

MATHEWS KURUVILLA, an individual,
MK CAPITAL, LLC, a North Carolina
limited liability company,

    Defendants.

FILED
CHARLOTTE, N. C.

JUN 1 7 2005

U. S. DISTRICT COURT
W. DIST. OF N. C.

**COMPLAINT**

Plaintiffs, Unicorn Investment Bank, B.S.C.(c) and The Unicorn Group, complaining of the defendants, Mathews Kuruvilla and MK Capital, LLC, state the following claims for relief:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Unicorn Investment Bank, B.S.C.(c) ("UIB") is an investment bank organized and chartered under the laws of the Kingdom of Bahrain and regulated by the Bahrain Monetary Agency. UIB was created on or about May 5, 2004, in Bahrain. UIB has its headquarters in Bahrain and seeks to invest in various projects, including projects in the United States.

2. Plaintiff The Unicorn Group is a Cayman Islands company, incorporated on November 1, 2000, for the purpose of establishing UIB. Until UIB was officially formed and received the necessary licensing to operate, The Unicorn Group acted as UIB's promoter.

3. On information and belief, Defendant Mathews Kuruvilla ("Kuruvilla") is a North Carolina resident, who currently resides at 13230 Whisper Creek Drive, in Charlotte, North Carolina 28277.

4. On information and belief, Defendant MK Capital, LLC ("MK Capital") is a North Carolina limited liability company, formed on or about March 20, 2000, which maintains its principal office and place of business in Charlotte, North Carolina. Kuruvilla is the managing member of MK Capital. According to its website, MK Capital is in the business of investment banking, financial consulting and advising. MK Capital's website lists Kuruvilla, John Geist, Stephen Ceurvorst, and Amar Saksena as its principals.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that the matter in controversy is between citizens of North Carolina and subjects of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391, in that the Defendants reside in this judicial district and because this judicial district is where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.

## GENERAL ALLEGATIONS

### Unicorn's Relationship with Kuruvilla.

7. The Unicorn Group was incorporated for the purpose of establishing UIB. The Unicorn Group sought all necessary regulatory licensing and banking registrations necessary to permit UIB to operate as an investment bank. In anticipation of establishing UIB, The Unicorn Group wanted to hire a financial consultant to research and negotiate investment opportunities for UIB, including real estate purchases.

2

8. Kuruvilla expressed an interest in working for The Unicorn Group and UIB in the summer of 2003, and The Unicorn Group received Kuruvilla's curriculum vitae on October 27, 2003. In late October 2003, The Unicorn Group told Kuruvilla that The Unicorn Group wanted to retain Kuruvilla as a financial consultant. The Unicorn Group informed Kuruvilla that he would act as The Unicorn Group's exclusive agent and would be responsible for exploring possible investments for UIB. The Unicorn Group and Kuruvilla expected that UIB would employ Kuruvilla to seek out investment opportunities as soon as UIB was licensed to operate as an investment bank.

9. Following these discussions, Kuruvilla agreed to attend a meeting on November 15, 2003, in Bahrain, during which The Unicorn Group would strategize about UIB business and budgeting. Three days prior to the meeting, Kuruvilla signed a confidentiality agreement, which precluded him from disclosing any information discussed or disseminated at the meeting.

10. Immediately alter the November 15, 2003 meeting, Kuruvilla began working for The Unicorn Group as its financial consultant. The parties' agreed that Unicorn would pay Kuruvilla $32,500 per month in United States dollars, and pay for Kuruvilla's housing (the "Consulting Agreement"). The parties later memorialized the Consulting Agreement in a letter agreement dated February 22, 2004. At the time The Unicorn Group retained Kuruvilla, he had never disclosed or suggested that he had any prior engagements or agreements that would conflict with his duties to The Unicorn Group, conflict with his duty of loyalty to The Unicorn Group or otherwise create a conflict of interest with his obligations to The Unicorn Group. UIB could not hire Kuruvilla as an employee until it satisfied all regulatory requirements and received the necessary investment banking license. The parties entered into the Consulting Agreement with the understanding that UIB and Kuruvilla would formalize an employment contract with

3

UIB when UIB was fully operational and they attached the essential terms of Kuruvilla's expected employment to the February 22, 2004 letter agreement.

11. UIB, The Unicorn Group and Kuruvilla understood that The Unicorn Group hired Kuruvilla with the understanding that he would be working as an agent exclusively for The Unicorn Group and that any projects or investments Kuruvilla identified, structured, or negotiated, would be solely on behalf of and for the benefit of The Unicorn Group and, ultimately, UIB.

**The Kuruvilla/Wilkinson Agreement.**

12. Wilkinson Corporation is a Washington corporation located in Yakima, Washington. Wilkinson is a real estate investment management company. It raises money for real estate investments, and then manages the properties for its investment groups. In late 2003, Wilkinson and Kuruvilla discussed a relationship where Kuruvilla would act as Wilkinson's representative in Europe and the Middle East, to seek out qualified investors for the Wilkinson Property Fund VII. Although Kuruvilla had already agreed to work as The Unicorn Group's financial and investment consultant, Kuruvilla agreed to also work for Wilkinson in the same capacity.

13. Kuruvilla prepared an agreement outlining the terms of his investment consultant agreement with Wilkinson (the "Kuruvilla/Wilkinson Agreement"), and the parties signed the agreement on January 19, 2004. At the time Kuruvilla signed the Kuruvilla/Wilkinson Agreement, he was actually in Bahrain meeting with The Unicorn Group as part of his work for The Unicorn Group. In the Kuruvilla/Wilkinson Agreement, the parties agreed that Kuruvilla's company, MK Capital, would be Wilkinson's financial advisor for the Middle East and Europe for the purpose of raising funds for investment in Wilkinson projects. They further agreed that

4

MK Capital would be Wilkinson's exclusive agent responsible for securing at least $5,000,000 in investment funding within 180 days of executing the Kuruvilla/Wilkinson Agreement. Wilkinson and MK Capital always understood that Kuruvilla would be performing the services for MK Capital under the Kuruvilla/Wilkinson Agreement.

14. Kuruvilla and MK Capital represented to Wilkinson in the Kuruvilla/Wilkinson Agreement that (1) MK Capital was not the exclusive financial advisor for any other client whose business would compete with Wilkinson, (2) MK Capital would promptly notify and obtain Wilkinson's consent before entering into any engagement as exclusive agent for any competitor, (3) any existing or future relationships with other clients would not interfere with MK Capital's work as Wilkinson's agent, and (4) MK Capital would not act in any way that would be against Wilkinson's best interest under the Agreement. The Kuruvilla/Wilkinson Agreement obligated MK Capital to perform its duties in accordance with all applicable laws, rules, and regulations and the highest standards of professional conduct. MK Capital and Wilkinson also agreed to broad obligations to keep all aspects of their work confidential and not to disclose any aspects of that work to any third parties without the permission of the other party.

15. Wilkinson agreed to pay MK Capital a non-refundable retainer fee of $25,000 and $10,000 per month thereafter. Wilkinson was also obligated to pay MK Capital a fee equal to 5% of the total amount of investment funds raised.

16. Neither Kuruvilla nor any other MK Capital representative ever informed Wilkinson of Kuruvilla's existing consulting arrangement with The Unicorn Group before or after Kuruvilla entered into the Kuruvilla/Wilkinson Agreement. Kuruvilla never told anyone at The Unicorn Group or UIB that he and MK Capital had entered into the Kuruvilla/ Wilkinson

5

Agreement, and the Unicorn Group and UIB were totally unaware of any of the Defendants' above-described secret arrangements with Wilkinson.

### The Unicorn/Wilkinson Joint Venture.

17. While working "exclusively" (and separately) for both The Unicorn Group and Wilkinson, Kuruvilla began negotiating a deal between his two principals wherein UIB and Wilkinson would enter into a joint venture real estate deal (the "Unicorn/Wilkinson Joint Venture"). UIB and Wilkinson ultimately formalized the Unicorn/Wilkinson Joint Venture effective October 8, 2004. While Kuruvilla purported to act as an agent separately for The Unicorn Group and Wilkinson while negotiating and working on the Unicorn/Wilkinson Joint Venture, Kuruvilla never disclosed his competing agency relationships to his competing principals and at all times kept his competing agency relationships hidden from his competing principals, each of whom was totally unaware that Kuruvilla was secretly representing the other principal.

18. At Kuruvilla's request, on April 27, 2004, Kuruvilla and Wilkinson amended the Kuruvilla/Wilkinson Agreement. The reason for Kuruvilla's request was that the proposed structure of the Unicorn/Wilkinson Joint Venture was not the traditional form of investment in a Wilkinson project, and MK Capital would not have earned a fee from Wilkinson on the proposed Unicorn/Wilkinson Joint Venture. In order to insure that MK Capital received a fee from Wilkinson for the Unicorn/Wilkinson Joint Venture, Kuruvilla proposed adding a "Fee and Profit Allocation" provision that entitled MK Capital to a portion of certain fees and profits arising out of investments made by Wilkinson using capital provided by investors that Kuruvilla solicited. Pursuant to the amendment, Kuruvilla would receive an acquisition fee, a management fee, a financing fee, a selling fee of 1% each and profit allocation of 10%. Wilkinson agreed to

6

Kuruvilla's proposed amendment. As a result of the amendment, Wilkinson effectively assigned part of its interest in the pending Unicorn/Wilkinson Joint Venture to MK Capital (and Kuruvilla).

19. UIB was formally established and legally operating on or about May 5, 2004. Effective May 5, 2004, Kuruvilla and UIB entered into an employment agreement (the "Employment Agreement") wherein Kuruvilla became UIB's Deputy Manager of Corporate Finance, with responsibility for identifying, structuring, and negotiating projects for UIB. The terms of the Employment Agreement superseded the terms of the Consulting Agreement. The parties agreed that the Employment Agreement shall be governed by and construed in accordance with the laws of Bahrain.

20. The Employment Agreement provided that UIB would pay Kuruvilla $300,000 per year in United States currency. The Employment Agreement also identified "Employee's Covenants," wherein Kuruvilla agreed to use his best efforts to promote UIB's business, and agreed that he would not be engaged in, either directly or indirectly, any competing business activity without UIB's prior written consent.

21. The Employment Agreement permitted UIB to terminate Kuruvilla "for cause" if he knowingly provided material misinformation to or concealed such information from the appropriate authorities at UIB. UIB could also terminate Kuruvilla for any breach of the Employment Agreement.

22. Kuruvilla never told UIB about the Kuruvilla/Wilkinson Agreement, either before or after Kuruvilla and UIB entered into the Employment Agreement, and he also never mentioned the partial assignment of Wilkinson's interest in the Unicorn/Wilkinson Joint Venture to MK Capital to anyone at The Unicorn Group or UIB.

7

23. Kuruvilla also never told UIB that as of January 31, 2002, in connection with his former employment at Bank of America, the New York Stock Exchange ("NYSE")had permanently barred Kuruvilla from membership in the NYSE and from working for any member of the NYSE.

24. After entering into the Employment Agreement, Kuruvilla continued to negotiate the terms of the Unicorn/Wilkinson Joint Venture. During the negotiations, Wilkinson believed that Kuruvilla was acting as Wilkinson's exclusive and loyal agent, and UIB believed that Kuruvilla was acting as UIB's exclusive and loyal employee.

25. On or about October 7, 2004, UIB and Wilkinson prepared to close on their agreement on the UIB/ Wilkinson Joint Venture. Even as UIB and Wilkinson entered discussions over the final closing terms, Kuruvilla continued to separately act as UIB's employee and Wilkinson's agent, such that UIB and Wilkinson each believed that Kuruvilla was working solely on its behalf.

26. On October 7, 2004, in preparation for closing the UIB/Wilkinson Joint Venture agreement, UIB contacted Wilkinson and asked Wilkinson to provide a signed statement that, to the best of its knowledge, Wilkinson was not aware of any payments that would be made to UIB employees in connection with closing the Unicorn/Wilkinson Joint Venture. UIB made this request pursuant to UIB's internal policies. When UIB explained that Kuruvilla was employed by UIB, Wilkinson expressed significant surprise. Wilkinson thereafter responded that, pursuant to its agreement with MK Capital, it was obligated to pay MK Capital more than $1 million in fees as well as a percentage of various fees that Wilkinson would be paid under the Unicorn/Wilkinson Joint Venture agreement, and that Wilkinson had in essence assigned one-third of Wilkinson's interest in the joint venture profits to Kuruvilla's company. Wilkinson

8

confirmed in writing that it was not aware prior to October 7, 2004, that Kuruvilla worked for The Unicorn Group or UIB.

27. While acting as UIB's employee, Kuruvilla sought and obtained reimbursement from Wilkinson for expenses he incurred negotiating the Unicorn/Wilkinson Joint Venture.

28. While Kuruvilla purported to act as an agent separately for The Unicorn Group and Wilkinson while negotiating and working on the Unicorn/Wilkinson Joint Venture, Kuruvilla never disclosed his competing agency relationships to his competing principals and at all times sought to keep his competing agency relationships hidden from his competing principals. Kuruvilla's conduct breached several fiduciary duties he owed to The Unicorn Group and UIB, and also breached his Consulting Agreement and Employment Agreement. As a result of Kuruvilla's conduct, the Unicorn/Wilkinson Joint Venture was substantially less favorable to UIB than it would have been if Kuruvilla had honored his duty of loyalty and fidelity to The Unicorn Group and UIB.

29. After further negotiation between UIB and Wilkinson without Kuruvilla, the parties agreed to close on the Unicorn/Wilkinson Joint Venture. At UIB's request, Wilkinson placed Kuruvilla's putative fee, in the amount of $1,005,000.00, into an escrow account in a commercial bank.

30. Wilkinson terminated its agreement with Kuruvilla on October 18, 2004, due to MK Capital's breach of its duties. UIB terminated Kuruvilla's employment on October 20, 2004.

31. Prior to October 2004, neither The Unicorn Group nor UIB were ever aware (1) that Kuruvilla was not their exclusive agent, (2) that he had entered into the Kuruvilla/Wilkinson Agreement, or (3) that Kuruvilla had received a significant interest in the Unicorn/Wilkinson Joint Venture through an assignment from Wilkinson.

9

### The Kuruvilla/Park Condos Agreement

32. Park Condos Project, 222 South Caldwell Street Partnership, and Peter J. Verna, Jr. (collectively referred to herein as "Park Condos") sought a consultant to secure financing for the construction of a condominium project (the "Park Condos Project"). Kuruvilla agreed to work as a financial advisor to Park Condos for the purpose of securing financing for the Park Condos Project. On March 11, 2004, Kuruvilla signed a letter agreement with Park Condos (the "Kuruvilla/Park Condos Agreement"), in which he agreed to secure funding of $25.5 million by October 15, 2004. The Kuruvilla/Park Condos Agreement provided that Kuruvilla would receive a closing fee equal to 4% of the total amount of financing he secured. Park Condos paid Kuruvilla an advance of $10,000 per month for his work, which amount would be subtracted from any fee he ultimately earned under the agreement.

33. Neither Kuruvilla nor any other MK Capital representative ever informed Park Condos that Kuruvilla was acting as The Unicorn Group's exclusive agent, or that he was later employed by UIB, either before or after Kuruvilla entered into the Kuruvilla/Park Condos Agreement. Kuruvilla never told anyone at The Unicorn Group or UIB that he had entered into the Kuruvilla/Park Condos Agreement.

### Unicorn/Park Condos Deal

34. While purporting to work exclusively for UIB, Kuruvilla sought, on Park Condos' behalf, an investment from UIB that would partially finance the Park Condos Project. UIB authorized Kuruvilla to conduct a due diligence analysis to determine if the Park Condos Project would be a beneficial investment for UIB. Kuruvilla incurred well in excess of $100,000 in due diligence and start up expenses on the Park Condos Project. Based on Kuruvilla's representations to UIB that he had performed the necessary investigation and that the Park

10

Condos Project would be a good investment for UIB, UIB indicated to Park Condos that UIB might invest $10 million in the project.

35. Shortly after UIB discovered the existence of the Kuruvilla/Wilkinson Agreement and Kuruvilla's arrangement to receive payment from Wilkinson on the Unicorn/Wilkinson Joint Venture, UIB learned that Kuruvilla had a similar arrangement with Park Condos. UIB and Park Condos ultimately agreed that UIB would not invest in the Park Condos Project, despite UIB having expended significant expense in its due diligence analysis.

36. Park Condos terminated the Kuruvilla/Park Condos Agreement on November 8, 2004.

37. As a direct and proximate result of the Defendants' misconduct, as described above, Plaintiffs have suffered the following losses and damages:

    a. Amounts paid to Kuruvilla under his Consulting Agreement with The Unicorn Group. in an amount not less than $195,000.00;

    b. Amounts paid to Kuruvilla under his Employment Agreement with UIB, in an amount not less than $125,000.00;

    c. Due diligence expenses and other expenses incurred by Plaintiffs as a result of Kuruvilla's double-dealing, in an amount not less than $290,000.00; and

    d. UIB's interest in the funds placed in escrow by Wilkinson, as described in paragraph 29 of this Complaint.

38. On information and belief, the total amount of Plaintiffs' damages and losses resulting from the Defendants' misconduct is well in excess of $1.6 million.

## FIRST CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY
## KURUVILLA/WILKINSON AGREEMENT

39. Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 38 of this Complaint.

40. Kuruvilla was the financial consultant and exclusive agent for The Unicorn Group and an employee of UIB. Kuruvilla owed strict fiduciary duties of loyalty, fidelity and responsibility to The Unicorn Group and UIB. Kuruvilla breached his fiduciary duties in a number of ways, including

   a. Entering into the Kuruvilla/Wilkinson Agreement, which contained duties and obligations that were in direct conflict with Kuruvilla's duties and obligations to The Unicorn Group and UIB; and

   b. Purporting to negotiate the Unicorn/Wilkinson Joint Venture on behalf of The Unicorn Group and UIB while Kuruvilla was also acting as Wilkinson's agent and being paid by Wilkinson as its agent, and while Kuruvilla stood to obtain significant fees and interests from Wilkinson as part of the Unicorn/Wilkinson Joint Venture.

41. Kuruvilla's breaches of fiduciary duty have damaged The Unicorn Group and UIB in an amount to be proven at trial. UIB's damages include, among other things, the funds deposited by Wilkinson into escrow, representing MK Capital's putative fee from the Unicorn/Wilkinson Joint Venture funding.

## SECOND CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY
## KURUVILLA/PARK CONDOS AGREEMENT

42. Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 41 of this Complaint.

43. Kuruvilla was the financial consultant and exclusive agent for The Unicorn Group when he entered into the Kuruvilla/Park Condos Agreement and he later became employed by UIB. Kuruvilla owed strict fiduciary duties of loyalty, fidelity and responsibility to The Unicorn Group and UIB. Kuruvilla breached his fiduciary duties in a number of ways, including

  a. Entering into the Kuruvilla/Park Condos Agreement, which obligated him to act in direct conflict with Kuruvilla's duties and obligations to the Unicorn Group and UIB; and

  b. Purporting to negotiate the Unicorn/Park Condos Deal on behalf of UIB while Kuruvilla was also acting as Park Condos' agent and being paid by Park Condos as its agent, and while Kuruvilla stood to obtain significant fees from Park Condos as part of the Unicorn/Park Condos Deal.

44. Kuruvilla's breach of fiduciary duty has damaged The Unicorn Group and UIB in an amount to be proven at trial.

### THIRD CAUSE OF ACTION: INTENTIONAL OR NEGLIGENT MISREPRESENTATION

45. Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 44 of this Complaint.

46. Kuruvilla made a number of misrepresentations of existing material facts to plaintiffs, including that he had no conflicts of interest that would prevent him from working as The Unicorn Group's and UIB's exclusive agent and that he had no financial interests that were adverse to The Unicorn Group and UIB.

47. Kuruvilla also misrepresented his qualifications and work history by failing to disclose the fact that the New York Stock Exchange ("NYSE") had permanently barred him from membership in the NYSE and from working for any member of the NYSE.

13

48. Kuruvilla's misrepresentations were material.

49. Kuruvilla's representations were false.

50. At the time when Kuruvilla made the representations, he knew the truth and failed to disclose it to plaintiffs. In the alternative, Kuruvilla negligently made the false representations.

51. When Kuruvilla made the false representations, he intended that plaintiffs rely on those facts and knew they were ignorant of the truth.

52. Plaintiffs reasonably relied on Kuruvilla's false representations and had the right to do so.

53. As a result, plaintiff suffered damages in an amount to be proven at trial. UIB's damages include the funds deposited by Wilkinson into escrow, representing MK Capital's putative fee from the Unicorn/Wilkinson Joint Venture funding.

### FOURTH CAUSE OF ACTION: BREACH OF CONTRACT CONSULTING AGREEMENT WITH THE UNICORN GROUP

54. Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 53 of this Complaint.

55. Kuruvilla entered into the Consulting Agreement with The Unicorn Group in November 2003, agreeing that he would work as an agent exclusively for The Unicorn Group and that any projects or investments Kuruvilla identified, structured, or negotiated, would be solely on behalf of and for the benefit of The Unicorn Group and, ultimately, UIB.

56. Kuruvilla breached this contract with The Unicorn Group in a number of ways, including the following:

    a. Kuruvilla breached the agreement when he failed to act exclusively as The Unicorn Group's investment agent. Kuruvilla entered into the Kuruvilla/Wilkinson Agreement, which contained duties and obligations that were in direct conflict with

14

Kuruvilla's duties and obligations to The Unicorn Group and UIB. Kuruvilla also purported to negotiate the Unicorn/Wilkinson Joint Venture on behalf of The Unicorn Group and UIB while Kuruvilla was also acting as Wilkinson's agent and being paid by Wilkinson as its agent.

      b.    Kuruvilla breached the agreement when he negotiated the amendment to the Kuruvilla/Wilkinson Agreement, entitling Kuruvilla and MK Capital to significant fees and interests from Wilkinson as part of the Unicorn/Wilkinson Joint Venture, resulting in less favorable terms to The Unicorn Group and UIB.

    57.    Kuruvilla's breach of contract has damaged The Unicorn Group in an amount to be proven at trial. The Unicorn Group's damages include, among other things, the funds deposited by Wilkinson into escrow, representing MK Capital's fee from the Unicorn/Wilkinson Joint Venture funding.

### FIFTH CAUSE OF ACTION: BREACH OF CONTRACT
### EMPLOYMENT AGREEMENT WITH UIB

    58.    Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 57 of this Complaint.

    59.    Kuruvilla entered into the Employment Agreement with UIB on May 5, 2004.

    60.    Kuruvilla breached this contract with UIB in a number of ways, including the following:

      a.    Kuruvilla breached the Employment Agreement by failing to use his best efforts to promote the interests of UIB. Kuruvilla entered into the Kuruvilla/Wilkinson Agreement, which contained duties and obligations that were in direct conflict with Kuruvilla's duties and obligations to The Unicorn Group and UIB. Kuruvilla also purported to negotiate the Unicorn/Wilkinson Joint Venture on behalf of The Unicorn

15

Group and UIB while Kuruvilla was also acting as Wilkinson's agent and being paid by Wilkinson as its agent, and while Kuruvilla stood to obtain significant fees and interests from Wilkinson as part of the Unicorn/Wilkinson Joint Venture.

  b. Kuruvilla breached the Employment Agreement by failing to use his best efforts of promote the interests of UIB. Kuruvilla entered into the Kuruvilla/Park Condos Agreement, which contained duties and obligations that were in direct conflict with Kuruvilla's duties and obligations to The Unicorn Group and UIB. Kuruvilla also purported to negotiate the Unicorn/Park Condos Deal on behalf of The Unicorn Group and UIB while Kuruvilla was also acting as Park Condos' agent and being paid by Park Condos as its agent, and while Kuruvilla stood to obtain significant fees and interests from Wilkinson as part of the Unicorn/Park Condos Deal.

  c. Kuruvilla violated the Employment Agreement by engaging in or taking an interest in a competing business activity. Kuruvilla's company, MK Capital, entered into the Kuruvilla/Wilkinson Agreement, which contained duties and obligations that were in direct conflict with Kuruvilla's duties and obligations to The Unicorn Group and UIB. Kuruvilla also purported to negotiate the Unicorn/Wilkinson Joint Venture on behalf of The Unicorn Group and UIB while Kuruvilla was also secretly acting as Wilkinson's agent and being paid by Wilkinson as its agent, and while Kuruvilla stood to obtain significant fees and interests from Wilkinson as part of the Unicorn/Wilkinson Joint Venture.

  d. Kuruvilla violated the Employment Agreement by engaging in or taking an interest in a competing business activity. Kuruvilla's company, MK Capital, entered into the Kuruvilla/Park Condos Agreement, which contained duties and obligations that

were in direct conflict with Kuruvilla's duties and obligations to The Unicorn Group and UIB. Kuruvilla also purported to negotiate the Unicorn/Park Condos Deal on behalf of The Unicorn Group and UIB while Kuruvilla was also acting as Park Condos' agent and being paid by Park Condos as its agent, and while Kuruvilla stood to obtain significant fees and interests from Park Condos as part of the Unicorn/Park Condos Deal.

   e. Kuruvilla violated the Employment Agreement by failing to disclose that his company, MK Capital, was being paid by Wilkinson for Kuruvilla's efforts as Wilkinson's agent, and failing to disclose that Kuruvilla stood to obtain significant fees and interests from Wilkinson as part of the Unicorn/Wilkinson Joint Venture.

   f. Kuruvilla violated the Employment Agreement by failing to disclose that his company, MK Capital, was being paid by Park Condos for Kuruvilla's efforts as Park Condos' agent, and failing to disclose that Kuruvilla stood to obtain significant fees and interests from Park Condos as part of the Unicorn/Park Condos Deal.

   g. Failing to disclose that he was permanently barred from the NYSE and from working for NYSE members due to improper conduct while employed at Bank of America.

61. Kuruvilla's breach of contract has damaged UIB in an amount to be proven at trial. UIB's damages include, among other things, the funds deposited by Wilkinson into escrow, representing MK Capital's putative fee from the Unicorn/Wilkinson Joint Venture funding.

### SIXTH CAUSE OF ACTION: DECLARATORY RELIEF

62. Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 61 of this Complaint.

63. Plaintiffs seek a judgment declaring that Kuruvilla is not entitled to the funds deposited into escrow by Wilkinson, and that as between Kuruvilla and UIB, those funds belong to UIB.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court to enter judgment in their favor and against the Defendants as follows:

1. Awarding Plaintiffs compensatory damages against the Defendants, in an amount to be determined at trial but in any event not less than $1.6 million;

2. Awarding Plaintiffs punitive damages against the Defendants, in an amount to be determined at trial;

3. Declaring that Defendants are not entitled to any of the funds deposited into escrow as described in Paragraph 29 of this Complaint; and

4. Granting to Plaintiffs such other and further relief as the Court deems just and proper.

DATED this 17th day of June, 2005.

McGuireWoods LLP

BY: _____
James C. Smith (N.C.S.B. #8510)
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, North Carolina 28202
Phone: (704) 373-8999
Facsimile: (704) 373-8935

*Attorneys for Plaintiffs*

\\COM\515988.1